JOHN DAMBROSIA *vs.* GEORGE T. EDWARDS.

Cumberland.        January 21, 1930.

*Edward J. Berman,*
*Jacob H. Berman,*
*Benjamin L. Berman,*
*David V. Berman,* for plaintiff.
*Francis W. Sullivan,* for defendant.

SITTING: DEASY, C. J., DUNN, BARNES, PATTANGALL, FARRINGTON, JJ.

FARRINGTON, J.    This was an action brought to recover damages for personal injuries.

For eight or nine seasons, beginning about the first of May and ending about the first of October of each year, the plaintiff had

worked for the defendant at a motor camp at Falmouth, Maine, owned and operated by the defendant individually.

The defendant was also President of George T. Edwards Real Estate Company, a corporation owning various tracts of land which were being developed, including one in Scarboro, Maine, known as Airport Park. The evidence shows that the defendant was, through his connection with the Company, in charge of these properties, including the development at Airport Park, and that the plaintiff, in the early Spring and in the Fall, after the work at the motor camp was ended, worked occasionally at these places, keeping his own time slips, and the defendant separated the items and himself paid the plaintiff for the work done for him individually, and for the corporation paid the plaintiff for the work done by him for it. The time slips which were introduced in evidence show that the charges were all made to the defendant, who testified that he had tried to explain to the plaintiff about his working for him individually and for the Company, according to the places where he worked, but that he was unable to make the plaintiff understand it. The plaintiff was paid at the rate of fifty cents an hour, and, in addition, at least one-half of his car fare was paid, the defendant stating that half the car fare was paid, and the plaintiff testifying rather vaguely but not stating that all his car fare was paid by defendant.

In the forenoon of September 25, 1928, the plaintiff was working for the defendant individually at the defendant's motor camp, and at some time in the morning of that day he was told by the defendant that in the afternoon he was to go to Scarboro to work, leaving the motor camp around noon.

The defendant had in his employ at the same time one Emil Belanger who worked at the motor camp, and at Scarboro when required, as the plaintiff did, and Belanger had been told by the defendant to go to Scarboro to work there in the afternoon of the same day, September 25, 1928.

On one point there is conflict of testimony. The plaintiff said that the defendant told him to go with Belanger in the latter's car, and in this connection the plaintiff's wife testified that she heard the defendant, in response to a question by the plaintiff, tell the plaintiff that he told Belanger to drive him to Scarboro. The defendant

testified that he first spoke to Belanger about going and then decided that he needed the plaintiff also and that he would have him go, and that, after telling him he was to go to Scarboro, he asked the plaintiff how he was going and the reply was that he was "going with Emil," and that the defendant then asked Belanger if it was all right for the plaintiff to go with him and received an affirmative reply.

About noon of September 25, 1928, the plaintiff and Belanger left the motor camp together in Belanger's car, bound for Scarboro for the afternoon's work there, and on the way occurred the accident in which the plaintiff sustained the injuries to recover for which he brought this action.

At the close of the testimony a verdict for the defendant was, on motion, directed by the presiding Justice. The case comes up on exceptions to the directed verdict, and also on exceptions to the exclusion of certain evidence offered by the plaintiff.

Assumption of the following situations at the time of the accident might be made:

(1) That the plaintiff and Belanger were both in the employ of the defendant individually and hence fellow servants;

(2) That the plaintiff and Belanger were both in the employ of the corporation and hence fellow servants;

(3) That Belanger was in the employ of the corporation and that the plaintiff was in the employ of the defendant individually and hence they were not fellow servants, the basis of (3) being that Belanger was loaned to the corporation, with his knowledge and consent, as is shown by the evidence, and that the plaintiff, never having understood the arrangement had never consented thereto and was still the servant of the defendant individually. *Berry* v. *New York Central & H. R. R. Co.*, 202 Mass., 197, citing *Morgan* v. *Smith*, 159 Mass., 570, and other cases. Under this assumption the plaintiff's action should have been against the corporation.

(4) That Belanger and plaintiff were both loaned to the corporation and, although Belanger had knowledge and gave consent and because the plaintiff did not have knowledge and had not given consent, they were still under the full control and direction of

defendant and hence defendant's servants, even though ostensibly loaned, and hence they were still fellow servants.

(5) That both the plaintiff and Belanger were loaned to the corporation with knowledge and consent, or under conditions which should have carried knowledge and consent, even on the part of the plaintiff, and although paid by the corporation were still under the full control and direction of the defendant individually and hence they were still fellow servants.

(6) That Belanger was in the employ of the corporation and that the plaintiff was in the employ of the defendant individually and that George T. Edwards was acting in his corporate capacity. Under this assumption, Edwards could not be liable individually.

In (1), (2), (4) and (5) of the above assumed situations the fellow servant rule, so well recognized in this State that citation of authority is unnecessary, would bar the plaintiff's right of action.

In (3) while the fellow servant rule would not be applicable, the action should have been against the corporation and the same is true of (6).

From the evidence in the case we are unable to find that the defendant was under any obligation to furnish transportation as such and attach no significance to the arrangement for car fare other than that of wages. Assuming the truth of the plaintiff's testimony that the defendant told him to go with Belanger, we are unable to see any situation, which might arise from the facts in the case, in which the plaintiff is not barred from recovery in this action, either because of the fellow servant rule or because he has sued the wrong party.

Assumption (7) might possibly be made that the plaintiff and Belanger were not in the employ of either the defendant or of the corporation at the time of the accident and hence neither the defendant nor the corporation would be liable.

Exceptions were also taken to the exclusion of certain evidence. The plaintiff was asked by his counsel, "When Mr. Edwards came down to your house to see you, what did he say to you relative to taking care of you and fixing everything up all right?" In the absence of the jury counsel stated that the answer would have been that on two occasions Mr. Edwards came to see the plaintiff and

that he told the plaintiff he was sorry that the accident had happened, that he would see that the plaintiff was taken care of and that everything would be all right. Testimony of the plaintiff's wife and that of two other witnesses was also offered in corroboration of what would have been testified to by the plaintiff as indicated above. This testimony was excluded by the presiding Justice. Exceptions were noted and allowed.

Assuming, without deciding, that the testimony should have been admitted and that, with all the other evidence in the case, it had gone to the jury, we fail to see where a verdict in favor of the plaintiff, under all the circumstances of the case including the excluded testimony, could have been justified or sustained. The exclusion of the evidence was clearly not prejudicial and for that reason the exceptions to its exclusion should be overruled.

For the reasons given above we find no error in the direction of a verdict for the defendant and that exceptions to that ruling should be overruled.

*Exceptions overruled.*